IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Jamie Paul Desper,  )
    Plaintiff,  )
  )
v.  )    1:11cv670 (AJT/IDD)
  )
H.J. Ponton, et al.,  )
    Defendants.  )

## MEMORANDUM OPINION

This Matter is before the Court on a Motion for Summary Judgment filed jointly by defendants Warden Ponton, Officer Rogers, Officer Desantis, and Counselor Evans. Jamie Paul Desper, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants violated his First Amendment free exercise rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants filed an answer to the complaint on February 3, 2012 and a Motion for Summary Judgment on May 7, 2012. Plaintiff filed motions for default judgment on April 11, 2012 and May 9, 2012, which were denied by Order dated May 29, 2012. Plaintiff also filed an opposition to defendants' Motion for Summary Judgment on June 27, 2012. For the reasons below, defendants' Motion for Summary Judgment will be granted.

### I. Background

The uncontroverted facts are as follow:

Plaintiff was confined at Mecklenburg Correctional Center ("MCC") from February 15 to December 29, 2011. Mot. Summ. J. ¶ 3, ECF No. 30. On March 25, 2011, plaintiff, in a written grievance, informed defendant Ponton that plaintiff would like to receive Bible study materials through the mail. Am. Compl. 8, ECF No. 15; Mot. Summ. J. ¶ 8, ECF No. 30.

To participate in religious services, inmates must sign up on sheets posted in their housing units. Mot. Summ. J. ¶ 12, ECF No. 30. On September 9, 2011, plaintiff submitted a grievance form complaining that he signed up to attend religious services on August 20, 2011 but was not allowed to attend. Mot. Summ. J. ¶ 4, ECF No. 30; Am. Comp. 8, ECF No. 15. After defendant Ponton responded that plaintiff's grievance was unfounded, plaintiff appealed the decision to the regional director, who upheld defendant Ponton's decision. Mot. Summ. J. ¶ 4, ECF No. 30.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law

will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

To merit protection under the Free Exercise Clause of the First Amendment, a claim must allege facts sufficient to satisfy two threshold criteria. First, plaintiff must allege that his belief or beliefs are sincerely held. Wisconsin v. Yoder, 406 U.S. 205, 215–16 (1972). Second, plaintiff must also allege that his claims are rooted in "religious" and not "purely secular" philosophical concerns. Id.; see Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 713–14 (1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which by its terms, gives special protection to the exercise of religion."). To be recognized as religious, sincerely held beliefs need not be "acceptable, logical, consistent, or comprehensive to others," Thomas, 450 U.S. at 714; based on the existence of a supreme being or beings, see Torcaso v. Watkins, 367 U.S. 488, 495 & n. 11 (1961); Myers v. Loudon County Public Schools, 418 F.3d 395, 411 (4th Cir. 2005) (quoting Torcaso, 367 U.S. at 495 n.11 for the proposition that the "Supreme Court has long recognized that some religions practiced in this country 'do not teach what would generally be considered to be a belief in the existence of God'"); based in or on a mainstream faith, see Thomas, 450 U.S. at 714; and, as the Supreme Court noted in the Establishment Clause case of McCreary County, Ky. v. American Civil

3

Liberties Union of Ky., 545 U.S. 844 (2005), such beliefs may even be encompassed in the practice of atheism. However, only <u>religious</u> beliefs garner free exercise protection under the First Amendment, and the Supreme Court has determined that a religion, which is entitled to such protection, is distinct from a "way of life," even one inspired by "virtuous and admirable" philosophical and personal preferences, which receives no such protection. See Yoder, 406 U.S. at 215–16.

"RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." Lord Versatile v. Johnson, 2011 WL 5119259 at *4 (E.D. Va. Oct. 27, 2011). Under RLUIPA, the government is prohibited from acting in ways that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). Although RLUIPA does not define the term "substantial burden," the United States Court of Appeals for the Fourth Circuit has held that, under RLUIPA, a "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas, 450 U.S. at 718). "On the opposite end of the spectrum . . . a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). "Religious exercise" in this context includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

4

A plaintiff asserting a claim under RLUIPA bears the initial burden of showing by a preponderance of the evidence that: (1) he or she seeks to engage in an exercise of religion; and (2) the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once the plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the defendants to show that their practice is the least restrictive means of furthering a compelling government interest. Lovelace, 472 F.3d at 185 (citing 42 U.S.C. § 2000cc-1(a)). Although RLUIPA forbids judicial inquiry into the question of whether a particular belief or practice is "central" to a prisoner's religion, 42 U.S.C. § 2000cc-5(7)(A), only beliefs or practices that are both sincerely held and rooted in religious belief fall under the protection of RLUIPA. See Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) (noting that under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a request for accommodation, is authentic" and whether his "professed religiosity" is "sincere"). Moreover, courts are required to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of cost and limited resources." Id. at 723.

Assuming without deciding that plaintiff's religious beliefs are sincerely held, MCC's policies concerning incoming publications and religious service and activity attendance do not violate plaintiff's rights under RLUIPA or the First Amendment Free Exercise Clause.

A. Incoming Publications

Plaintiff alleges that, when he asked defendant Ponton if plaintiff could continue to receive Bible study materials through the mail, defendant Ponton responded, "not while [you are] at Mecklenburg." Am. Compl. 8, ECF No. 15. He also claims that officers did not respond to grievances he filed on the issue. Id.

5

In a sworn affidavit, defendant Ponton cites Virginia Department of Corrections Operating Procedure 803.2, which governs incoming publications. Ponton Aff. ¶ 4, ECF No. 30-2. OP 803.2 states: "Transient offenders at reception centers are discouraged from purchasing publications due to the short time spent in these facilities. Reception centers should inform offenders during orientation of the facility limits and ordering procedures for publications." Id. at. Encl. A, pt. V.A. MCC is a reception and classification facility to which this policy applies. Id. at ¶ 1. Defendant Ponton states that he responded to plaintiff's request on March 28, 2011 and told him about MCC's policy. Id. ¶ 5. Ponton further states that he "informed Desper that if he could provide proof that he would lose money he spent on the materials, I would reconsider my decision. To my knowledge, Desper did not provide proof that he had invested money in the course." Id.

MCC's policy regarding incoming publications did not substantially burden plaintiff's religious exercise. Even without being permitted to subscribe to the Bible study course, plaintiff had the opportunity to exercise his religion by attending religious activities and services. Evans Aff. ¶ 6, ECF No. 30-3. Furthermore, Ponton gave plaintiff an opportunity to show that an exception to the incoming mail policy was warranted, but plaintiff did not pursue that option. Defendants have shown that Operating Policy 803.2 furthers a compelling state interest of maintaining administrative order at MCC. Because it does not substantially burden an inmate's right to exercise his religion and is entitled to deference per Cutter, the policy does not violate plaintiff's rights under RLUIPA.

Because MCC's policy regarding incoming publications complies with the more rigorous standard set by RLUIPA, it perforce also passes muster under the First Amendment.

B. Religious Service/Activity Attendnace

Plaintiff alleges that, occasionally, when he signed up to attend religious services on Fridays, Saturdays, and Sundays, "Ms. Evans doesn't even bother putting me on the church list and when I am on the list I'm on the alternate list and a lot of times the alternates don't even get to go." Am. Compl. 8, ECF No. 15. He further alleges that "Mr. Rogers lies and tells people that church is full when it is far from full" and that on May 27, 2011, "Mr. Desaintes [sic] would not allow me to go to church." Id. Plaintiff claims that staff ignored several complaints he filed on the issue. Id.

Plaintiff's counselor, defendant Evans, explains in a sworn affidavit that Virginia Department of Corrections Operating Procedure 841.3 "sets forth that offenders at reception centers may be allowed to sign up for religious programs and services on a first-come, first-served basis (i.e. based on space and supervision at that facility)." Evans Aff. ¶ 4, ECF No. 30-3. Evans further explains that "Christian services are the most requested religious services for Mecklenburg's offender population[,] which exceeds 700 offenders." Id. at ¶ 5. Because of the demand for Christian services, "offenders are permitted to attend one service/activity per week." Id. According to Evans's records, plaintiff was approved to attend eleven different activities/services between March and May 2011. Id. at ¶ 6. His name was on the alternate list of inmates who would be permitted to attend if space became available six different times in that time period. Id. As to plaintiff's allegations concerning defendants Rogers and Desantis, both officers, in sworn affidavits, deny that they prohibited plaintiff, or had knowledge that plaintiff was prohibited, from attending religious activities on any occasion. Rogers Aff. ¶¶ 4, 5; ECF No. 30-4; Desantis Aff. ¶ 4; ECF No. 30-5.

MCC's policy did not substantially burden plaintiff's ability to practice his religion. While plaintiff clearly states that he did not get to attend a service or activity every time he requested to do so, defendants have shown the need for a policy that places reasonable limits on an inmate's ability to attend services, mainly that space is not available for all inmates who would like to attend services on a given day. Staff at MCC must give all inmates an opportunity to attend services if they so desire, meaning that, due to demand, others will not be able to attend. Furthermore, despite plaintiff's allegations, the policy did not substantially burden his ability to attend services. Defendants have shown that he had permission to attend approximately one service or activity each week from March to May 2011, per MCC's guidelines. Therefore, the policy limiting religious service and activity attendance did not violate plaintiff's right to practice his religion.

Because MCC's policy regarding religious service attendance complies with the more rigorous standard set by RLUIPA, it perforce also passes muster under the First Amendment.

### IV. Conclusion

Because MCC's policies regarding incoming publications and religious service attendance did not violate RLUIPA or plaintiff's First Amendment Free Exercise Clause rights, defendants Warden Ponton, Officer Rogers, Officer Desantis, and Counselor Evans's Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this 2␣ day of November 2012.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia

8